FRUGÉ, Judge.
This is an action to recover damages for an assault and battery which is alleged to have been committed on the person of the plaintiff, Charles D. McDaniel, by the defendant, Hugh Paul Cormier. After trial on the merits, judgment was rendered in favor of the defendant dismissing the plaintiff’s suit, and the plaintiff has appealed to this court.
The plaintiff is engaged in the business of selling and repairing home appliances. His [plaintiff’s] home is located adjacent to the building in which the appliance business is conducted. The defendant had purchased a washing machine from the former owner of the appliance business now operated by the plaintiff, but the machine, because of some malfunction, was in need of repair. Some two months prior to the alleged assault, the defendant’s wife contacted plaintiff’s wife in an effort to arrange for the repair of the machine. The defendant’s wife was informed, however, that the commencement of repairs would be delayed because of a heavy backlog of repair orders. On a later occasion the defendant himself spoke to the plaintiff’s wife over the telephone and expressed his dissatisfaction with the plaintiff’s inability to commence repairs on the defendant’s washing machine. Some time thereafter, on the morning of the alleged incident, the plaintiff went to the defendant’s home and picked up the machine, transporting it to his repair shop and disassembling it in an effort to locate the source of the trouble.
That evening, when the defendant returned home he was informed by his wife that the plaintiff had picked up the washing machine and that she had heard a rumor from a third party that the plaintiff would not repair the machine because the defendant “insulted” the plaintiff’s wife during their telephone conversation of some days ago. In this connection, the defendant testified that he tried to call the plaintiff’s home by telephone but that the line was busy.' He stated that his purpose in calling was to apologize to the plaintiff’s wife for any insulting remarks he might have made previously. He further testified that since he could not reach the plaintiff’s home by phone, he decided to drive over and apologize to plaintiff’s wife in person. The defendant thereupon proceeded to the plaintiff’s place of residence and upon arriving was met at the door by the plaintiff. The defendant asked to see the plaintiff’s wife and, when she came to the door, he apologized for any insulting remarks which he might have made to her during their earlier telephone conversation. To the defendant’s apology the plaintiff’s wife replied that she did not feel that she had been insulted and that it was not necessary that the defendant apologize.[1]
The defendant’s version of the ensuing events is as follows: The defendant testified that after his apology to the plaintiff’s wife he turned to speak to the plaintiff, Mr. McDaniel. He stated that he told the plaintiff that, “If you feel that you don’t want to fix my machine, I think the best thing you can do is bring it back home.” According to the defendant, the plaintiff replied, “If I bring it back home to you it’s going to be in a thousand pieces.” Whereupon, the defendant replied that if he did that [returned the machine in a thousand pieces], he [the defendant] would “put this on you” (indicating a closed fist). The defendant testified that the plaintiff re *760 sponded by pushing him backward and that at the same moment he pushed the plaintiff backward and that the plaintiff fell over a toy wagon on the floor. Thereafter, the defendant related, the plaintiff arose from the floor, grabbed the defendant by the collar and began striking him. Then, in the words of the defendant,
“A * * * we wrestled there for a while and I hit him a couple of times in the ribs and I knocked him down. Then he came back up swinging with his left hand. He swung at me and I ducked and I grabbed him around the waist. I hit him a couple of times in the ribs and I knocked him down and I fell on him. I hit him two or three times on the ground and then I got up.
Q What did you do after he got up ?
A I started backing off towards my car.
Q And what did he do ?
A He went to his truck, picked up a tire tool.
Q And by that time, where were you?
A I was at my car.
Q What, if anything, did he tell you after he got the tire tool ?
A He said something, but I don’t remember exactly what his words were.
Q What did you tell him, if anything?
A I told him, I said, ‘Throw that tire tool away and come meet me on the road and we’ll finish this off.’ ”
The plaintiff made no advance toward the road, however, and the defendant got in his car and drove to his home.
The plaintiff’s version of the altercation is similar to the account given by the defendant except that he (and his wife and nine year old daughter) testified that after an exchange of words the defendant grabbed him by the collar and pushed him so that he fell over a toy wagon which was behind him on the floor. The plaintiff stated that when he got back up, he “went back after him” and that “we went round and round.” (Tr. p. 47).
From this evidence the trial judge concluded that the defendant went to the plaintiff’s home for the purpose of apologizing to the plaintiff’s wife and that the fight between the parties began “instantaneously and simultaneously” after an exchange of angry words. The judge below further concluded that the plaintiff had failed to carry his burden of proof in establishing that the defendant was the aggressor in the altercation between them. He accordingly rendered judgment in favor of the defendant dismissing plaintiff’s suit.
We have reviewed the record with care and we are unable to say that the trial judge committed manifest error in deciding that the plaintiff had failed to bear the burden of proof incumbent upon him. Especially in cases of this nature, the firsthand observations of the trial judge are entitled to great weight and are presumed correct in the absence of clear and convincing evidence to the contrary appearing in the record. See Veillon v. Sylvester, 174 So.2d 189 (La.App.3d Cir. 1965); Broadway v. Wester, 193 So.2d 855 (La.App.3d Cir. 1967) certiorari denied, and authorities cited therein. Having given our full attention to the testimony contained in this record, we are of the opinion that the decision of the trial judge is fully supported by the evidence therein and thus should be affirmed without modification.
Therefore, for the foregoing reasons the judgment of the lower court is hereby affirmed, the plaintiff-appellant to bear all costs.
Affirmed.

. We note from a reading of the record that until this point the accounts of both the plaintiff and the defendant and their respective witnesses are in very substantial agreement. The events following the apology differ only with regard to which party actively provoked the fight.